UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **RUCHELLE JANN WALKER (SNELL)** | * | **CIVIL ACTION NO. 08-1983** |
| **VERSUS** | * | |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

### MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For reasons assigned below, the decision of the Commissioner is **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

On September 18, and 24, 2003, respectively, Ruchelle Jann Walker a/k/a Snell (hereinafter, "Walker"), filed the instant applications for Title XVI Supplemental Security Income payments and Title II Disability Insurance Benefits. *See* Tr. 51, 100-101.[1] She alleged disability since May 20, 2003, because of fibromyalgia, "osteo," glaucoma, mercury and lead poisoning, carpal tunnel syndrome in both arms, and a right knee problem. (Tr. 100, 126). The

---

[1] A prior application dated October 7, 1994, was dismissed by an Administrative Law Judge on September 11, 1995. (Tr. 51). There is no indication that this dismissal was further appealed.

applications were denied at the initial stage of the administrative process. (Tr. 47, 59-62). Thereafter, Walker requested and received an August 8, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 374-399). However, in a December 21, 2005, written decision, the ALJ determined that Walker was not disabled under the Act, finding at Step Five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 48-58). Walker appealed the adverse decision to the Appeals Council. On August 8, 2006, the Appeals Council granted Walker's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 85-89).[2]

A new hearing was held before a different ALJ on October 17, 2006. (Tr. 400-425). However, in a June 7, 2007, written decision, the ALJ determined that Walker was not disabled under the Social Security Act, this time finding at Step Four of the sequential evaluation process that she was able to return to her past relevant work as a sewing machine operator, an office manager, an administrative assistant, and a receptionist. (Tr. 14-24). Walker again appealed the adverse decision to the Appeals Council, but to no avail. (Tr. 8-10). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Id*.

On December 19, 2008, Walker sought review before this court. She alleges that the ALJ's Step Four determination is fatally flawed because his implicit underlying finding that she

---

[2] During the pendency of her appeal, Walker filed new applications for benefits on March 22, 2006. (Tr. 112-114). The applications were denied at the initial stage of the administrative process. (Tr. 93-96). Accordingly, Walker requested a hearing before an ALJ, which the agency acknowledged on October 10, 2006. (Tr. 97-99). Typically, when the Appeals Council vacates and remands an ALJ's decision, it will consolidate the subsequently filed application(s) with the earlier application(s) for the ALJ's consideration upon remand. That was not done here, and there is no acknowledgment in the latest ALJ's decision that it also pertained to the March 2006 applications. *See* Tr. 58. Nonetheless, it is apparent that the rationale for the denial is equally applicable to the March 2006 applications.

can perform semi-skilled or skilled work is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

> (1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.
>
> (2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.
>
> (3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of

4

performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Walker did not engage in substantial gainful activity during the relevant period. (Tr. 19). At Step Two, he found that Walker suffers severe impairments of major depressive disorder, mixed personality disorder with paranoid and dependent features, fibromyalgia, glaucoma, and a history of mercury poisoning. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. *Id*.

### II. Residual Functional Capacity Assessment and Step Four

The ALJ determined that Walker retained a residual functional capacity for a wide range of light work, reduced by the ability to only occasionally climb, balance, stoop, kneel, crouch, and crawl, and by moderate limitations in her ability to maintain sustained concentration and persistence. (Tr. 20).[3] The ALJ further observed that glaucoma causes Walker to suffer

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves

decreased visual acuity in her right eye. (Tr. 23). However, her corrected visual acuity in her left eye caused no significant functional limitation. *Id.*

At Step Four of the sequential evaluation process, the ALJ relied upon vocational expert ("VE") testimony to determine that Walker could return to her past relevant work as a sewing machine operator, an office manager, an administrative assistant, and a receptionist, as those jobs are generally performed in the national economy. (Tr. 23-24).[4] At the hearing, the VE characterized these jobs as either semi-skilled or skilled. (Tr. 420-421).

Plaintiff's sole argument before this court is, in effect, that the ALJ's mental residual functional capacity assessment is not supported by substantial evidence because it did not limit plaintiff to simple, unskilled work.[5] During the relevant period, plaintiff underwent two consultative psychological evaluations. The first was administered by David Atkins, Ph.D. on January 25, 2005. (Tr. 243-246). Despite some limitations of functioning, Atkins opined that overall, Walker retained the capacity to sustain competitive, gainful employment in a semiskilled

---

> sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[4] For purposes of Step Four, past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61).

[5] Plaintiff does not challenge the ALJ's physical residual functional capacity assessment, which is substantially supported by record evidence. *See e.g.*, Tr. 329-337, 343-346, 428-450.

occupation. *Id*. The second evaluation was administered by Robert Krenek, Ph.D. and Samuel Thomas, Ed.D. (collectively, "Krenek-Thomas") on November 6, 2006. (Tr. 347-354). They concluded that Walker could perform "*at least* low-level unskilled job responsibilities in a normal, competitive work environment." *Id*. (emphasis added).[6]

Although Atkins and Krenek-Thomas's findings appear to be consistent with the ALJ's assessment, plaintiff argues that, upon closer examination, they are not. First, plaintiff emphasizes that Krenek-Thomas did not actually state that she could perform semi-skilled or skilled work. Second, she notes that in his report, Dr. Atkins further found that she had only a marginal ability to sustain attention for complex tasks, which, according to her, undermines his opinion that she could perform semi-skilled work.

The court is not so persuaded. Krenek-Thomas's opinion that plaintiff could perform *"at least* low-level unskilled job[s]" (emphasis added) does not preclude the ability to perform semi-skilled or skilled work. Moreover, Dr. Atkins' limitation regarding plaintiff's ability to sustain attention for complex tasks is arguably encompassed within the moderate limitation on her ability to maintain sustained concentration adopted by the ALJ. Furthermore, plaintiff's own activities during the relevant period belie an inability to perform semi-skilled or skilled work. For instance, her medical records indicate that in September 2006 she was teaching English composition and music at school, despite her impairments. (Tr. 357).[7] Also, at the latest

---

[6] Thomas also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental), wherein he indicated that Walker suffered slight or no limitation of functioning. (Tr. 352-354).

[7] The position of teacher or tutor is considered a skilled position. *See e.g.*, DICTIONARY OF OCCUPATIONAL TITLES 099.227-034 TUTOR (EDUCATION).

hearing, plaintiff stated that she was attending classes, part time – an activity that suggests some ability to maintain concentration for new and challenging tasks. (Tr. 420).

IV. **Conclusion**

For the foregoing reasons, the undersigned finds that the Commissioner's decision is supported by substantial evidence and remains free of legal error. Accordingly,

The Commissioner's decision is **AFFIRMED**, and the matter **DISMISSED with prejudice**.

THUS DONE AND SIGNED at Monroe, Louisiana, this 26th day of March 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

Perhaps plaintiff did not teach for very long, because she told the ALJ that she had not worked since September 24, 2003. (Tr. 407). According to the record, however, she also was working in April 2006. (Tr. 369).